Argued and submitted June 2, reversed and remanded December 8, 1993

Debbra DALBY,
*Appellant,*

*v.*

SISTERS OF PROVIDENCE IN OREGON,
dba St. Vincent Hospital and Medical Center,
*Respondent.*

(C911284CV; CA A76751)

865 P2d 391

Thomas W. Kohl argued the cause for appellant. With him on the briefs was Frost & Kohl.

Barbara L. Johnston argued the cause for respondent. With her on the brief were Larry A. Brisbee and Brisbee & Stockton.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a judgment dismissing her claims for wrongful discharge and intentional infliction of emotional distress. ORCP 21A(8).[1] We reverse.

Plaintiff alleges that, in 1989, she was employed by defendant as a pharmacy technician. Her responsibilities included taking a monthly inventory of all drugs in defendant's pharmacy department. Plaintiff became aware of inaccuracies in the inventory. She told her immediate supervisor about the inaccuracies and also informed him that defendant's record keeping of its drug inventory was in violation of Oregon Administrative Rules, chapter 855. She alleges:

"8.

"Defendant's record keeping of its drug inventory was in violation of appropriate state standards. Pursuant to Oregon Administrative Rule ('OAR') 855-41-120, et seq, Defendant was required to inventory its drugs, conduct a monthly audit of its inventory and maintain written policies and procedures to comply with these requirements. In addition, Defendant was required to establish and implement effective procedures and maintain adequate records regarding the use and accountability of controlled substances.

"9.

"As indicated above, part of Plaintiff's duties involved maintaining the drug inventory for Defendant. During the course of Plaintiff's employment, there were instances in which the drug inventory was consistently short. Plaintiff always brought the inaccuracies to the attention of [plaintiff's supervisor]. As far as Plaintiff knew, [plaintiff's supervisor] did nothing concerning her reports of the drug shortages.

"10.

"Rather than comply with the requirements of OAR Chapter 855, Defendant, by and through its agents, began a

---

[1] Plaintiff also alleged a claim for defamation, which was dismissed because it was not commenced within the time limited by statute. ORCP 21A(9). That ruling has not been appealed.

course of retaliation against Plaintiff for Plaintiff's insistence upon compliance with the regulations.

"11.

"On one occasion, during July of 1990, [plaintiff's supervisor] accused Plaintiff of stealing cocaine from Defendant's drug inventory.

"12.

"In August of 1991, Plaintiff learned that [plaintiff's supervisor], along with other agents of Defendant caused the Washington County Sheriff's Department to investigate her in regard to their claim that she was stealing cocaine. In fact, Defendant, by and through its agents, asked the Washington County Sheriff's Department to arrest Plaintiff. The Washington County Sheriff's Department refused to make such an arrest.

"13.

"The allegations concerning Plaintiff stealing cocaine were groundless and had no basis in fact and were part of Defendant's retaliation against Plaintiff for raising questions about Defendant's drug inventory and procedure involved therein.

"* * * * *

"23.

"Because of the actions by Defendant against Plaintiff involving the allegations of stealing drugs, purported attendance problem, cold and callous treatment by [plaintiff's supervisor] against Plaintiff and Plaintiff's complaints about Defendant's drug inventory, Plaintiff was forced to resign her position."

Additionally, plaintiff alleges that defendant's retaliatory conduct included her supervisor's refusal to talk to her except when necessary for job-related purposes and defendant's "rigid" application of its attendance policy to her. Defendant had a written attendance policy that covered excessive absenteeism. In her complaint, plaintiff asserts that she was absent numerous times for legitimate reasons, and that she received a warning concerning her attendance. On October 17, 1991, following another absence, she was told that any further absences would result in defendant terminating her employment. That night, she became ill, and the next day she gave notice that she was quitting her job. The

gist of her claim is that defendant refused to consider that she had *bona fide* reasons for her absences.

In reviewing a motion to dismiss, we review the complaint and consider as true the facts alleged and all reasonable inferences that may be drawn therefrom. *Glubka v. Long*, 115 Or App 236, 238, 837 P2d 553 (1992). The essence of plaintiff's wrongful discharge claim is that she was constructively discharged from her employment because she was fulfilling an important societal obligation, *i.e.*, insisting that defendant comply with the provisions of OAR chapter 855.[2] Defendant argues that plaintiff's allegations do not demonstrate that she was fulfilling an important societal obligation by reporting the noncompliance with the administrative rules.[3]

■ ■ An employer may not discharge an employee for fulfilling an important societal obligation. Such an obligation arises out of a clear mandate of existing law that comes from a constitutional provision, a statute, an administrative rule or case law. *See Delaney v. Taco Time Int'l, supra* n 3. Pharmacies in Oregon are extensively regulated by both statute and administrative rule. *See* ORS ch 689; OAR ch 855. Much of that regulation is directed to the monitoring and keeping of records about substances that could be harmful to the public. That is particularly true of controlled substances kept for pharmaceutical purposes. In the light of the public's interest in maintaining adequate control of such substances, we conclude that an employee of a pharmacy who makes a good faith report to an employer of noncompliance with the drug inventory and record keeping requirements of OAR chapter 855 fulfills an important societal obligation. *See Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 831 P2d 73 (1992); *see also McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 110, 684 P2d 21, *rev den* 298 Or 37 (1984).

■ Defendant also argues that plaintiff's allegations do not demonstrate that she was constructively discharged

---

[2] Plaintiff alleges more particularly that defendant was not in compliance with OAR 855-41-120 *et seq*. Those regulations are directed to hospitals with pharmacies.

[3] Defendant does not argue that plaintiff has an adequate remedy for its conduct. Therefore, we do not address that issue. *See Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984).

because of "intolerable" working conditions. The elements of a constructive discharge are described in *Bratcher v. Sky Chefs, Inc.*, 308 Or 501, 506, 783 P2d 4 (1989):

> "(1) that the employer deliberately created or deliberately maintained the working condition(s) (2) *with the intention of forcing the employee to leave the employment*, and (3) that the employee left the employment because of the working conditions." (Emphasis supplied.)

■ Plaintiff argues that, when all of her allegations are considered together, she has alleged those elements. However, working conditions are not "unacceptable" for purposes of a tort claim for wrongful discharge when an employer enforces an absenteeism policy or communicates with an employee only when necessary for job purposes.[4] Moreover, plaintiff does not expressly allege that defendant accused her wrongfully of a crime with the intention of forcing her to resign. Nonetheless, she does allege that defendant "began a course of retaliation against plaintiff" because she insisted on compliance with the administrative rules. The retaliation included the false accusation of theft, causing plaintiff to be investigated by the Washington County Sheriff's Department, and asking it to arrest her. From these allegations, an inference can be made that defendant intended to force plaintiff to leave her employment so that she could not "blow the whistle" on defendant's alleged continual noncompliance with the rules. For those reasons, we conclude that the trial court erred in dismissing the claim for wrongful discharge.

■ Plaintiff also assigns error to the dismissal of her claim for intentional infliction of emotional distress, which incorporates the same factual allegations as the wrongful discharge claim plus an additional allegation:

> "The actions of Defendant, and its agents, were done intentionally with the purpose to cause plaintiff extreme emotional distress and to cause her to resign her employment with Defendant."

Defendant argues that, even if the allegations are true, they do not constitute an extraordinary transgression of the bounds of socially tolerable conduct. *See Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000 (1989).

---

[4] Plaintiff does not allege that the absenteeism policy was applied disparately.

We agree only in part.[5] Plaintiff's allegations give rise to a reasonable inference that defendant, knowing that it had no reasonable basis for believing that plaintiff was involved in the theft of defendant's drug inventory, initiated an accusation of theft, encouraged the sheriff's investigation of her and made a request that she be arrested, all because she was insisting that defendant comply with the administrative rules. Those allegations, if true, constitute an extraordinary transgression of socially tolerable conduct. *See Hall v. May Dept. Stores*, 292 Or 131, 141, 637 P2d 126 (1981); *see also Woods v. First American Title Ins. Co.*, 102 Or App 343, 794 P2d 454, *mod* 104 Or App 100, 798 P2d 1121 (1990), *rev den* 311 Or 151 (1991).[6]

■　Defendant counters that, even if that is the case, the allegations that there were controlled substances missing, and that plaintiff was a person who handled those controlled substances, provide the basis for "the right and the responsibility to look into this situation" and that a criminal investigation was necessary. Therefore, it reasons that its actions cannot be a basis for a claim for intentional infliction of emotional distress. The facts underlying that argument may support a defense to plaintiff's claim but, for the purposes of a motion to dismiss under ORCP 21A(8), we assume plaintiff's allegations to be true. The court erred in dismissing plaintiff's claims.

Reversed and remanded.

---

[5] Defendant's supervisor's refusal to greet or socialize with plaintiff does not constitute an extraordinary transgression of socially tolerable conduct. *See Patton v. J. C. Penney Co.*, 301 Or 117, 124, 719 P2d 854 (1986). Moreover, plaintiff's allegations about defendant's application of the attendance policy to her absenteeism do not constitute such conduct.

[6] The allegations in this case differ from those in *Madani v. Kendall Ford, Inc.*, 312 Or 198, 203, 818 P2d 930 (1991). In *Madani*, the plaintiff claimed that his distress was caused by the firing itself. The court held that the mere act of firing an employee did not transgress the bounds of socially tolerable behavior, and therefore, the allegations did not state a claim for intentional infliction of severe emotional distress.